Van Voobhis, J. (dissenting).
Regardless of whether these charitable trusts (Matter of Ablett, 3 N Y 2d 261; Matter of Perkins, 3 N Y 2d 281; Matter of Bishop, 3 N Y 2d 294) vested for the benefit of these British voluntary hospitals, it seems to me that they were divested by the enactment of the British Hospital Nationalization Acts (9 & 10 Geo. VI, ch. 81; 10 & 11 Geo VI, ch. 27). The controlling question is not the capacity of these nationalized British hospitals to take or the lawfulness of the purpose under the British law, but the intention of the testator as determined by the courts of New York State. These English statutes, for good reasons or otherwise, have dissolved the voluntary hospitals which were the objects of testators’ bounty and transferred their assets to agencies of the government. It is expressly enacted that private endowments shall vest in these agencies free of any existing trusts. It is well established under New York law that charitable gifts for designated uses and purposes cannot be diverted or applied to uses other than those specified in the will or other instrument of gift (St. Joseph’s Hosp. v. Bennett, 281 N. Y. 115, and cases *280 cited). These British statutes, however wise or commendable they may be, empower the government to do just that, which is the exact opposite of what our law allows.
Moreover, a gift to a charitable or eleemosynary institution is not a gift to the British Government. It is said that the effect of the nationalization of these hospitals is merely that the government makes up the deficit in their respective operations, with the consequence that their affairs are severally conducted substantially as before, but with the aid of government money to the extent that the individual voluntary hospitals were unable to make ends meet. The record does not bear out these statements. No provisions of these British statutes have been called to our attention imposing the duty upon the government to defray these deficits, but, on the contrary, they confer upon instrumentalities of the government the broadest possible discretion in the disposal of these assets and render the nationalized hospitals dependent in every respect upon the government. Not only may the avails of charitable trusts be applied to provide health services anywhere in England and Wales, or in Scotland, as the case may be, but if they are devoted to the provision of health services in the places named by these testators (London, Leeds, Dunfermline), the legal effect is simply that the government need appropriate that much less for the support of those hospitals than it would otherwise be called upon to do, leaving an equivalent amount., of government money available to be spent in other localities. That leaves the charitable trust funds earmarked in name only for health services in the places designated in these wills.
For the reason that the enactment of the National Health Service Acts puts an end to the charitable organizations to which these gifts were made and destroys the legal obligation to apply these funds to the purposes for which these testators donated them, and not by reason of the advisability or inadvisability of the National Health Service Acts, I vote to reverse the judgments appealed from and to dispose of these funds for the benefit of the other charitable or educational institutions named in the wills or by cy pres.
Desmond, Dye, Fuld, Froessel and Burke, JJ., concur with Conway, Ch. J.; Van Voorhis, J., dissents in an opinion.
Order affirmed. , .